**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0226-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JEAN BIEN-AIME-NICOLAS,

    Defendant-Appellant.

_____

Submitted March 5, 2024 – Decided March 18, 2024

Before Judges Rose and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-05-0952.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Hannah Faye Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jean Bien-Aime-Nicolas appeals from the June 28, 2022 Law Division order, which denied his petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant contends a remand for an evidentiary hearing is mandated because he made a prima facie showing of ineffective assistance of counsel (IAC) by demonstrating plea counsel incorrectly advised him of deportation consequences and PCR counsel failed to present his self-represented motion to withdraw his plea. We reverse and remand for an evidentiary hearing.

I.

Defendant, a non-citizen, was born in France and began residing in the United States in 2007. After defendant pleaded guilty to unlawfully possessing a handgun, N.J.S.A. 2C:39-5(b)(1), and was sentenced in 2017, he was deported. Defendant has two children residing in the United States.

On May 5, 2015, defendant was charged in an Essex County grand jury indictment with: first-degree robbery, N.J.S.A. 2C:15-1(a)(1) (count one); second-degree kidnapping, N.J.S.A. 2C:13-1(b) (count two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three); second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1) (count four); fourth-degree possession of a prohibited

weapon, N.J.S.A. 2C:39-3(d) (count five); third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (count six); third-degree endangering the welfare of children, N.J.S.A. 2C:24-4(a) (count seven); and third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a) (count eight).

Defendant entered a negotiated plea agreement. On June 2, 2017, defendant pleaded guilty to second-degree unlawful possession of a handgun after completing plea forms with plea counsel. In response to question seventeen, defendant indicated he was not a United States citizen. He also indicated he understood that his "guilty plea may result in [his] removal from the United States" and he had the "right to seek individualized advice from an attorney." Defendant, however, did not answer question seventeen's remaining sub-parts regarding potential immigration consequences. Specifically, he failed to respond to whether he had "discussed . . . the potential immigration consequences" of his plea with an attorney, and "[w]ould like the opportunity to do so." Additionally, he failed to answer whether he "still wish[ed] to plead guilty" after being advised of the possible immigration consequences.

During the plea hearing, the judge comprehensively asked several questions confirming that defendant understood the possibility of deportation, had discussed deportation consequences with counsel, and still wished to plead

3

guilty though deportation was likely. Defendant responded in the affirmative to the judge's specific question, "without knowing for sure, let us assume that you will be deported, do you still wish to plead guilty?" The following exchange occurred regarding defendant's citizenship status and deportation:

> THE COURT: Having been advised of the possible immigration consequences resulting from your guilty plea, do you still wish to plead guilty?
>
> DEFENDANT: Yes.
>
> . . . .
>
> THE COURT: [Plea counsel], are you satisfied the plea should be entered and it's entirely voluntary on your client's behalf?
>
> PLEA COUNSEL: Yes, Judge. I would just like to add, for purposes if the matter is ever revisited in the immigration context, that I have been in contact for some time, repeated contact, with the immigration attorney, with the Office of the Public Defender in our Camden office, who has indicated that the plea here today to the second-degree possession of a gun and possession of a gun only is not a crime of moral turpitude and is not an aggravated felony. . . . What I'm placing on the record now is what I have been advised and what I have advised my client . . . it is not a mandatory deportation event. However, should [defendant] leave the country, in all probability, if not certainty, he will be barred from re-entry. And should he wish to apply for U[nited] S[tates] citizenship, he will have to wait at least five years to re-establish good conduct.

A-0226-22

PLEA COUNSEL: [Defendant], is that accurate? Is that what you and I have discussed?

DEFENDANT: Yes, sir.

. . . .

PLEA COUNSEL: Judge, before we close the record, and, again, relative to any immigration consequences, I was advised that the original plea tendered to [defendant] was a five-year maximum with a forty-two-month minimum. That five-year top number would, in fact, trigger immigration consequences. . . . [A]fter speaking to Mr. Imhoff over lunch today, the forty-two-month maximum with a forty-two-month minimum should avoid that problem.

[(Emphasis added).]

Further, after confirming his ability to read and write English, defendant acknowledged reviewing and answering the plea forms. The judge did not address defendant's failure to respond to all the plea form deportation questions.

On July 17, 2017, pursuant to the plea agreement, the judge sentenced defendant to a forty-two-month term of imprisonment with a forty-two-month period of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), and dismissed the remaining counts. At sentencing, the judge noted defendant had an "[Immigration and Customs Enforcement] detainer" and stated, "presumably, when his sentence is through here, he will be deported."

Defendant contends he filed a self-represented PCR petition, an accompanying brief, and a motion to withdraw his plea. He also filed multiple certifications and amendments dated between December 2020 and January 2021. It is unclear whether all the documents provided on appeal were submitted to the judge. Defendant maintains he was unaware he was subject "to mandatory deportation" and not informed of "the immigration consequences of" his guilty plea. In a supplemental certification, defendant asserted plea counsel "assured" him he "would not be deported" and that "there was no chance or risk of any deportation." He further averred "he would never have accepted the plea deal" if he knew deportation were possible. PCR counsel filed a supplemental PCR brief, incorporating defendant's self-represented arguments. In pertinent part, PCR counsel argued: plea counsel provided ineffective assistance because defendant was not advised he was subject to mandatory deportation; and genuine issues of material fact required a hearing.

On June 28, 2022, after argument, the PCR judge rendered an oral decision and memorializing order denying defendant's PCR petition. The judge found plea counsel "alert[ed] . . . defendant of the deportation risk associated with the plea." The judge concluded "the totality of circumstances" indicated "defendant was not misle[d] by [plea] counsel." He reasoned that counsel "had inquired of

immigration counsel" regarding "what the plea would mean in terms of the prospect or possibility of deportation," defendant "was made aware of that possibility," and defendant nonetheless "decided he wanted a plea deal . . . even assuming it meant deportation for him."  The judge did not address defendant's self-represented motion to withdraw his plea.

On appeal, defendant raises the following points:

> POINT ONE
>
> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT [PLEA] COUNSEL RENDERED [IAC] BY FAILING TO INFORM HIM OF THE DEPORTATION CONSEQUENCES OF HIS PLEA.
>
> POINT TWO
>
> [DEFENDANT]'S MOTION TO WITHDRAW HIS PLEA MUST BE REMANDED FOR A NEW PCR COUNSEL OR, IN THE ALTERNATIVE, FINDINGS OF FACT AND CONCLUSIONS OF LAW BY A PCR COURT.

## II.

In the absence of an evidentiary hearing, we review de novo the factual inferences drawn from the record by the PCR judge as well as the judge's legal conclusions.  State v. Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020).  "We are not bound by, and owe no deference to, the trial court's legal

conclusions." State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (citing State v. Harris, 181 N.J. 391, 415 (2004)). A petitioner must establish entitlement "to PCR by a preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014).

To succeed on an IAC claim, a defendant must satisfy both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), as adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). "First, the defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. This requires demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. The United States Constitution requires "reasonably effective assistance." Ibid. An attorney's performance will not be deemed deficient if counsel acted "within the range of competence demanded of attorneys in criminal cases." Ibid. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Therefore, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. A petitioner is not automatically entitled to an evidentiary hearing by simply raising a PCR claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.

1999). When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." 466 U.S. at 689.

Under the second prong, "the defendant must show that the deficient performance prejudiced the defense." Id. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693.

In the context of a PCR petition challenging a guilty plea based on an IAC claim, the second prong is established when the defendant demonstrates a "reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. Nuñez Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). However, a defendant also must show "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Our Supreme Court, in State v. Gaitan, addressed deportation advice of counsel, establishing that "an attorney must tell a client when removal is mandatory when consequences are certain." 209 N.J. 339, 380-81 (2012).

9

Defendants can establish IAC if their attorney provided false or inaccurate advice that the plea would not result in deportation. Nuñez-Valdéz, 200 N.J. at 141-42. The United States Supreme Court has clarified that counsel's duty is not limited to avoiding false or misleading information, but also includes an affirmative duty to inform a defendant entering a guilty plea of the relevant law pertaining to mandatory deportation. See Padilla v. Kentucky, 559 U.S. 356, 369 (2010). When deportation is a clear consequence of a guilty plea, the defendant's counsel has an affirmative duty to address the subject and give correct advice. See id. at 369. Conversely,"[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." State v. Chau, 473 N.J. Super. 430, 443-44 (App. Div. 2022) (alterations in original) (quoting Padilla, 559 U.S. at 369). Counsel's "failure to advise a noncitizen client that a guilty plea will lead to mandatory deportation deprives the client of the effective assistance of counsel guaranteed by the Sixth Amendment." State v. Barros, 425 N.J. Super. 329, 331 (App. Div. 2012) (citing Padilla, 559 U.S. at 369).

A-0226-22

A.

Defendant argues the PCR judge erred in failing to hold an evidentiary hearing because he demonstrated a prima facie showing that he would not have pleaded guilty, and would have gone to trial, had he known his deportation was mandatory. We agree. The judge denied the petition without an evidentiary hearing, finding that defendant was aware of the deportation consequences of his plea; however, the plea forms and colloquy indicate otherwise.

Relevantly, when defendant pleaded guilty, section 237(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a), provided that an alien "shall . . . be removed if the alien is within one or more of the following classes," including "[c]ertain firearm offenses." Section 237(a)(2)(C) of the INA stated:

> Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in [18 U.S.C. § 921(a)]) in violation of any law is deportable.
>
> [8 U.S.C. § 1227(a)(2)(C).]

18 U.S.C. § 921(a)(3)(A) defines a firearm as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a

11

projectile by the action of an explosive." Thus, defendant's conviction for possession of a handgun without a permit mandated deportation under the INA.

It is undisputed defendant's agreement to plead guilty contemplated potential deportation consequences resulting from his conviction. In negotiating the plea agreement with the State, defendant's plea counsel asked immigration counsel regarding mandatory deportation for a possession of a handgun conviction with a forty-two-month term of imprisonment sentence. During the plea colloquy, plea counsel clarified that "relative to any immigration consequences, [he] was advised that . . . the forty-two-month maximum with a forty-two-month minimum should avoid" deportation. On the record, plea counsel asserted that he explained to defendant the handgun conviction was "not a mandatory deportation event." Plea counsel's basis for advising defendant that the conviction was not a mandatory deportation class offense under the INA was based on his consultation with an immigration attorney. There is no further information in the record indicating plea counsel's reasons for concluding that defendant's sentencing term in a third-degree range would avoid mandatory deportation.

We further observe at the plea hearing, the judge did not address defendant's failure to respond to the plea form questions regarding whether he

had previously discussed with plea counsel the potential immigration consequences and whether he wanted to pursue "the right to seek individualized legal advice" on immigration issues. Nor is there any indication in the record that defendant was afforded an opportunity to speak with the immigration attorney referenced by his attorney during the plea hearing. For these reasons, we part ways with the PCR judge's finding that the record demonstrates defendant "was not misled to believe that he would[] [not] be deported."

We conclude defendant has sufficiently established a prima facie showing that plea counsel misinformed defendant regarding the immigration consequences of his guilty plea. When the deportation consequence after a conviction is clear, "an attorney must tell a client when removal is mandatory." See Gaitan, 209 N.J. at 380. It is clear an evidentiary hearing is warranted when, as here, "[w]e cannot discern from [the] record whether . . . plea counsel could have easily determined with 'only very basic legal research' that these plea[] would render defendant deportable." See Chau, 473 N.J. Super. at 446-47.

Defendant demonstrated material issues of fact regarding the reasonable probability that but for plea counsel's alleged IAC as to the immigration consequences, he would have gone to trial and not pleaded guilty. See R. 3:22-10(b) (noting entitlement to an evidentiary hearing requires "a prima facie case

13

in support of [PCR], [and] . . . material issues of disputed fact that cannot be resolved by reference to the existing record"). "Because plea counsel's understanding of the law and h[is] advice to defendant . . . about the [mandatory] immigration consequences of his plea lie outside the record, . . . an evidentiary hearing is" required to address defendant's assertions of IAC and any resulting prejudice. Chau, 473 N.J. Super. at 446-47.

## B.

We briefly address defendant's arguments that a remand is mandated because PCR counsel failed to present defendant's self-represented motion to withdraw his guilty plea, thereby requiring appointment of a new PCR counsel, and the PCR judge failed to address the motion.

In New Jersey, the right to the effective assistance of counsel extends to PCR counsel. See State v. Rue, 175 N.J. 1, 18-19 (2002). PCR counsel "should advance all of the legitimate arguments requested by the defendant that the record will support." R. 3:22-6(d). Thus, "PCR counsel must communicate with the client, investigate the claims urged by the client, and determine whether there are additional claims that should be brought forward." State v. Webster, 187 N.J. 254, 257 (2006). However, PCR counsel is not required to bolster claims raised by a defendant that are without foundation. Ibid.

In the present matter, defendant limits his contentions to the adequacy of the factual basis for his guilty plea. We recognize the PCR judge did not address defendant's contentions. See R. 3:22-11 (requiring the court to "state separately its findings of fact and conclusions of law" in its disposition of a PCR petition). However, it is unclear from the record provided on appeal that defendant filed the motion for the judge's consideration. The remand hearing, therefore, should also encompass defendant's motion. PCR counsel should ensure defendant's multiple petitions and certifications are provided to the judge. However, we discern no reason for appointment of new PCR counsel.

In summary, the matter is remanded for an evidentiary hearing on defendant's IAC claims and consideration of his self-represented motion to withdraw his guilty plea, limited solely to the adequacy of the factual basis underscoring his guilty plea. We express no view on the merits of any of defendant's contentions.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0226-22